THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN J. O'MALLEY, Defendant-Appellant.

Second District   No. 2—04—0329

Opinion filed May 6, 2005.

John J. O'Malley, of Chicago, appellant *pro se.*

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Sabrina S. Henry, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

After a bench trial before the circuit court of Lake County, defendant, John J. O'Malley, was found guilty of resisting or obstructing a peace officer (720 ILCS 5/31—1 (West 2002)) and fleeing or attempting to elude a police officer (625 ILCS 5/11—204(a) (West 2002)), as well as two other traffic offenses. Defendant appeals, contending: (1) that the State failed to prove an essential element of the offense of fleeing or attempting to elude a police officer; (2) that he was wrongfully convicted of resisting or obstructing a peace officer; and (3) that the sentence of probation for fleeing or attempting to elude a police officer should be vacated.[1] For the reasons that follow, we affirm the judgment of the circuit court. However, we vacate the sentences imposed for fleeing or attempting to elude a police officer and for resisting or obstructing a peace officer, and we remand for resentencing.

## I. FACTS

Defendant was charged with unlawful possession of not more than 2.5 grams of cannabis (720 ILCS 550/4(a) (West 2002)), resisting or obstructing a peace officer by failing to place his hands on his vehicle (720 ILCS 5/31—1 (West 2002)), resisting or obstructing a peace officer by failing to move his feet into position to facilitate a pat-down search (720 ILCS 5/31—1 (West 2002)), speeding (625 ILCS 5/11—601(b) (West 2002)); fleeing or attempting to elude a police officer (625 ILCS 5/11—204(a) (West 2002)), failing to carry and exhibit his

---

[1] In his notice of appeal, defendant lists Lake County case Nos. 03—TR—133806 (speeding) and 03—TR—133810 (failure to carry and exhibit a driver's license) but does not argue on appeal that the convictions or sentences imposed for these offenses were erroneous. These convictions and sentences are therefore affirmed.

driver's license (625 ILCS 5/6—112 (West 2002)), and driving under the influence of a drug or combination of drugs (625 ILCS 5/11—501(a)(4) (West 2002)). Defendant, who is licensed to practice law in the State of Illinois, pleaded not guilty to all charges, waived his right to trial by jury, and elected to represent himself during the bench trial.

Lieutenant John Jansky of the Lake County sheriff's department testified that at about 10:15 a.m. on September 11, 2003, he was in a marked squad car headed east on Belvidere Road (IL Route 120), on his way to the State's Attorney's office in Waukegan. Jansky was traveling in the left lane of Belvidere Road at a speed of approximately 50 to 54 miles per hour when a black Mercedes traveling in the right lane passed his squad car. Jansky "paced" the speed of the Mercedes at 70 miles per hour by traveling behind the Mercedes at a constant distance for several hundred feet and observing his squad car's speedometer. The posted speed limit on Belvidere Road at that location was 50 miles per hour. After determining the speed of the Mercedes, Jansky activated the squad car's rotating red lights, flashing headlights, blue and red strobe lights, and in-car video system. At that point, the Mercedes moved from the right lane to the left lane such that it was traveling directly in front of the squad car. Jansky indicated that the squad car's lights were activated near the Lakehurst Road intersection. When asked if he activated the squad car's siren, Jansky said, "[a]t that point no."

The driver of the Mercedes did not respond to the squad car's lights. Next, Jansky observed the Mercedes' brake lights activate and the Mercedes slow to about 60 miles per hour, only to accelerate again. The Mercedes repeated this pattern several times. Jansky said that they then passed under the Route 41 or Route 43 overpass and entered an "S" curve. Jansky noticed the Mercedes drive on top of the outside lane marker and then move to the right, driving on top of the lines dividing the right and left lanes. Jansky said that there was no indication that the driver of the Mercedes intended to pull over. When the Mercedes reached a red light at the Knight Avenue intersection, Jansky was able to maneuver his squad car around the left side of the Mercedes and put his squad car in front of the Mercedes at an angle that prevented the Mercedes from continuing any further.

Although not included in the record on appeal, a videotape from Jansky's squad car's video system was played at trial. Jansky indicated that the video depicts about one minute of footage of the Mercedes driving on Belvidere Road between Lakehurst Road and Knight Avenue.

Jansky testified further that, after stopping the Mercedes, he ap-

proached its driver's-side window and told defendant to exit the vehicle. Defendant did not comply. Jansky said that he told defendant to exit the vehicle a second time, and defendant did not comply. With Jansky's third command to exit the vehicle, defendant looked at Jansky, sat there for 10 seconds, then started to exit in a dazed condition and stumbled as he did so. Jansky said that defendant started to fall over, so he and Commander Vandergriff of the Lake Zurich police department held defendant up. Jansky explained that Vandergriff was also on his way to the State's Attorney's office that morning, but was traveling in a separate vehicle. Jansky told defendant to place his hands on the front left fender of the Mercedes, and defendant did not comply. When ordered again, defendant again failed to comply. As Jansky and Vandergriff moved toward defendant, defendant turned around and placed his hands on the Mercedes. Jansky said that he told defendant to move his feet backward so that defendant could be patted down, and defendant did not comply. Jansky said that he had to physically move defendant's feet back. After further investigation, including field sobriety testing and the discovery of suspected cannabis seeds and leaves on the Mercedes' front seats and driver's-door map pocket, Jansky placed defendant under arrest for driving under the influence of drugs. Thereafter, defendant refused to submit to a blood or urine test.

On cross-examination, Jansky agreed that the squad car he was driving on the morning in question was equipped with a working siren and that he did not activate it while behind the Mercedes. Jansky admitted that defendant ultimately did get out of the Mercedes and that Jansky did not have to pull defendant out. Jansky admitted further that defendant ultimately obeyed all his commands and did nothing physically to harm him or any other officer at the scene.

A plastic bag containing the substance recovered from defendant's Mercedes was admitted into evidence at trial along with a report prepared at the Northern Illinois Crime Laboratory indicating that the substance weighed 0.09 grams and contained cannabis. Defendant stipulated that the substance was found in his vehicle and to the chain of custody, and he had no objection to the admission of the substance into evidence. Defendant also stipulated to the authenticity and admission into evidence of the lab report.

During his case, defendant testified that he was driving on Belvidere Road on the morning in question on his way to the Lake County courthouse. Defendant said that he was late for court. Defendant admitted that he exceeded the speed limit, but he denied being under the influence of drugs or alcohol. Defendant said that he never saw the marijuana that was recovered from his Mercedes until Jansky

showed it to him at the courthouse. Defendant testified that he passed all the field sobriety tests that were administered and that his physical agility was not impaired.

On cross-examination, defendant admitted that he did not have his driver's license on his person on the morning in question. Defendant said that he did not see the squad car's lights until he stopped at the red light and the squad car pulled around in front of his vehicle. Defendant added that he did not have his rearview mirror properly adjusted and that he would have realized that Jansky was attempting to pull him over had Jansky utilized the siren. Defendant said that he only hesitated when Jansky told him to put his hands on the Mercedes and that there was no undue delay. Defendant said that it was possible that Jansky had to tell him more than once to put his hands on the vehicle. Defendant said that he moved slowly when Jansky asked him to move his feet back. Defendant admitted that Jansky may have touched him to move his feet back.

After hearing the foregoing evidence and closing arguments, the trial court found defendant not guilty of unlawful possession of cannabis (720 ILCS 550/4(a) (West 2002)), resisting or obstructing a peace officer (failure to place his hands on the vehicle) (720 ILCS 5/31—1 (West 2002)), and driving under the influence of a drug or combination of drugs (625 ILCS 5/11—501(a)(4) (West 2002)). The trial court found defendant guilty of resisting or obstructing a peace officer (failure to move his feet to facilitate a pat-down search) (720 ILCS 5/31—1 (West 2002)); speeding (625 ILCS 5/11—601(b) (West 2002)); fleeing or attempting to elude a police officer (625 ILCS 5/11—204(a) (West 2002)); and failing to carry and exhibit a driver's license (625 ILCS 5/6—112 (West 2002)). On the same date, the trial court placed defendant on 18 months of court supervision on the resisting or obstructing a peace officer charge and on 18 months of probation on the fleeing or attempting to elude charge, and the court entered convictions, with court costs assessed, on the speeding and failure to carry and exhibit a driver's license charges. Thereafter, defendant's posttrial motion was denied. Defendant has filed a timely notice of appeal.

## II. ANALYSIS

### A. Fleeing or Attempting to Elude a Police Officer

■ First, defendant asks us to reverse his conviction of fleeing or attempting to elude a police officer because, he contends, the State failed to prove an essential element of the offense when it failed to show that the police officer activated his horn or siren while driving behind defendant's Mercedes. In response, the State argues that activation of a siren or horn is unnecessary to sustain a conviction of fleeing or attempting to elude a police officer. We agree with the State.

The determination of the essential elements of a criminal offense presents an issue of statutory construction. The cardinal rule of statutory construction is to give effect to the true intent and meaning of the legislature. *People v. Whitney*, 188 Ill. 2d 91, 97 (1999). The best indication of the legislature's intent is the language of the statute itself. *Whitney*, 188 Ill. 2d at 97. There is no rule of construction that allows a court to declare that the legislature did not mean what the plain language of the statute imports. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). Thus, "[w]here the statutory language is clear, it will be given effect without resort to other aids for construction." *People v. Hickman*, 163 Ill. 2d 250, 261 (1994). Questions of statutory construction are reviewed *de novo*. *People v. Davis*, 199 Ill. 2d 130, 135 (2002).

The relevant version of section 11—204(a) provided:

"(a) Any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, wilfully fails or refuses to obey such direction, increases his speed, extinguishes his lights, or otherwise flees or attempts to elude the officer, is guilty of a Class A misdemeanor. The signal given by the peace officer may be by hand, voice, siren, red or blue light. Provided, the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights as required in Section 12—215 of Chapter 12." 625 ILCS 5/11—204(a) (West 2002).

Defendant highlights the phrase, "which when used in conjunction with an audible horn or siren," and argues that the statute thereby expressly and unequivocally mandates that the flashing lights be used in conjunction with an audible horn or siren so that the motorist will realize that the vehicle behind his is an official police vehicle. We disagree because the statute contains no such mandate.

The statute contemplates a police officer giving a motorist either an audible or visual signal to bring the motorist's vehicle to a stop. 625 ILCS 5/11—204(a) (West 2002). However, in the special circumstance where the officer giving the motorist the signal to stop is in a vehicle, the statute requires that the signal be in the visual form of "illuminated oscillating, rotating or flashing red or blue lights." 625 ILCS 5/11—204(a) (West 2002). The word "shall" is generally construed as mandatory language. *People v. Felella*, 131 Ill. 2d 525, 539 (1989). As such, the signal to stop in this situation must, at

minimum, be in the form of "illuminated oscillating, rotating or flashing red or blue lights." The sentence following the description of the lights explains that the illuminated oscillating, rotating or flashing red or blue lights must be such that "when used in conjunction with an audible horn or siren would indicate the vehicle to be an official police vehicle." Thus, the language regarding the horn or siren merely describes the type of lights that must be used to effectuate a stop. The legislature did not use the word "shall" or other mandatory language requiring that the horn or siren be used in conjunction with the illuminated oscillating, rotating or flashing red or blue lights. As we wrote in *People v. Murdock*, 321 Ill. App. 3d 175, 177 (2001): "We are not free to rewrite the language of the legislature, which speaks for itself. See *People ex rel. Gibson v. Cannon*, 65 Ill. 2d 366, 369 (1976) (where the language of a statute is unambiguous, the court's function is to enforce the statute as enacted)." Consequently, we reject defendant's contention that the State failed to prove an essential element of fleeing or attempting to elude a police officer, and we affirm the trial court's finding of guilty of that charge.

Defendant also argues that this court's decision in *Murdock* is directly on point. We disagree. In *Murdock*, we held that proof that the pursuing officer was wearing a uniform is an essential element of the offense and that it was lacking. *Murdock*, 321 Ill. App. 3d at 177. We did not decide whether an officer who is driving a vehicle and giving a motorist a signal to stop must use a horn or siren in addition to utilizing "illuminated oscillating, rotating or flashing red or blue lights." We do note, however, that the legislature used the word "shall" when it referenced the police uniform requirement but not in its reference to the horn or siren.

### B. Resisting or Obstructing a Peace Officer

■ Defendant's second contention is in two parts. First, he contends that he was "wrongfully convicted of resisting arrest where the trial court's judgment was at odds with its own stated findings of fact." Second, he contends that he was wrongfully convicted of resisting arrest where the trial court's judgment was "logically inconsistent with its not guilty finding on a second count of resisting arrest." After stating this two-part contention in the heading to the second part of his appellate brief, defendant quotes a portion of Lieutenant Jansky's trial testimony regarding his interaction with defendant at the scene. He also quotes a portion of the assistant State's Attorney's closing argument during which the trial court interjected, "[i]t's one of the weakest obstructing a police officer charge[s] that I've ever seen, other than giving a false name, and that's probably more obstructive." Next,

apparently in support of the first part of this contention, defendant writes, "[r]emarkably, after stating that this is one of the weakest cases he had ever seen and suggesting that it may have been overcharged, the Trial Judge found the Defendant guilty of the resisting charge related to not moving his feet when asked to do so by the officer." Remarkable or not, defendant does not identify the trial court's specific finding of fact that he believes is inconsistent with a finding of guilty, and he does not cite pertinent legal authority to support this contention. Consequently, it is waived. See 188 Ill. 2d R. 341(e)(7); *People v. Davis*, 213 Ill. 2d 459, 470 (2004) (to avoid waiver, a party must raise its arguments and provide citation to legal authority).

In support of the second part of this appellate contention, defendant points out that the trial court found him not guilty of the other charge of resisting a peace officer, which alleged that defendant refused to comply with Jansky's order to place his hands on the vehicle. Defendant points out further that the two instances of alleged resisting, refusing to place his hands on the vehicle and refusing to move his feet backward to facilitate a pat-down search, occurred in immediate chronological and physical proximity to each other. Defendant does not explain, however, why these circumstances make a finding of guilty as to one charge of resisting a peace officer inconsistent with a finding of not guilty as to the other, and he does not cite pertinent legal authority in support of this contention. Consequently, it is waived. See 188 Ill. 2d R. 341(e)(7); *Davis*, 213 Ill. 2d at 470 (to avoid waiver, a party must raise its arguments and provide citation to legal authority).

Near the end of the section of his appellate brief dealing with his second contention, defendant adds the argument that his inability to quickly move his feet backward when ordered to do so was obviously the result of his dazed and confused condition and, therefore, not resisting arrest. In order to sustain a conviction of resisting or obstructing a peace officer, the State must prove beyond a reasonable doubt that the defendant acted knowingly. 720 ILCS 5/31—1 (West 2002). "Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning." 720 ILCS 5/4—5(b) (West 2002). Although not identified as such in his brief, defendant is arguing that he did not knowingly resist or obstruct the officer and that, therefore, the State failed to prove an essential element of the offense. This argument is also waived, for the same reasons the previous contentions are waived.

Waiver aside, we believe that this argument, even if made

adequately, lacks merit. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Although there was evidence suggesting that defendant was in a dazed condition when he exited the Mercedes, there was other evidence, like defendant's successful completion of the one-leg-stand field sobriety test, that suggests that defendant was not in such a mental state that he could not timely comply with the officer's orders. As such, viewing the evidence in a light most favorable to the State, we believe that a rational trier of fact could have concluded that defendant acted knowingly in refusing to move his feet backward to facilitate the pat-down search.

Defendant also adds the generic argument that his conviction of resisting or obstructing a peace officer should be reversed because the evidence at trial was insufficient to sustain the conviction. The sum total of this argument is as follows:

"While great deference is given to a Trial Judge's findings at a bench trial, there are special situations and circumstances that can warrant a reversal on reasonable doubt grounds. *People v. Warren*, 40 Ill. App. 3d 1008, 353 N.E.[2d] 625 (First Dist., 1976), *People v. McCarthy*, 102 Ill. App. 3d 519, 430 N.E. 2d 135 (First Dist., 1981), *People v. Griffin*, 29 Ill. App. 3d 581, 331 N.E.[2d] 131 (First Dist., 1975)[.]

The case at bar is one of those rare cases where the Bench Trial finding cannot stand the scrutiny of Appellate Review."

Defendant does not identify the element of the offense that he claims was not sufficiently proven, nor does he in any manner explain how the evidence was insufficient to prove him guilty of this offense beyond a reasonable doubt. We deem this contention waived, as it is devoid of argument or citation to legal authority in contravention of the requirements of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)). See *Davis*, 213 Ill. 2d at 470 (to avoid waiver, a party must raise its arguments and provide citation to legal authority). The appellate court is not a depository into which a party may dump the burden of research. *People v. Williams*, 267 Ill. App. 3d 82, 86 (1994). It is well settled that we are entitled to a well-reasoned argument, along with authority for such argument. *Williams*, 267 Ill. App. 3d at 86.

## C. Sentencing

■ Defendant's final appellate contention is that his sentence of probation for fleeing or attempting to elude a police officer should be vacated because the trial court committed plain error at the time of sentencing, where it erroneously believed that court supervision was

not an authorized disposition for the offense and, consequently, sentenced defendant to a period of probation rather than court supervision. The State concedes that court supervision is an authorized disposition for a charge of fleeing or attempting to elude a police officer but argues that the trial court's comments in imposing sentence on that charge do not show that the trial judge was clearly mistaken as to the available sentencing range. The State argues that the trial judge's comments could just as easily have been a statement finding that court supervision was not appropriate in this case. We disagree.

When it imposed sentence on defendant for the fleeing or attempting to elude charge, the trial court said:

> "I understood when the Court entered the finding of guilty on the fleeing charge that it would be non-probationable. It is not subject to Court supervision, I should say.
>
> And I'm going to place the Defendant on a period of 18 months concurrent probation for that offense."

Clearly, the trial court was expressing its belief that the disposition of court supervision was not authorized by law when it said that the charge was not "subject to" it. The trial court clearly was not saying that, in its discretion, defendant was not entitled to court supervision. A trial court's misapprehension of a minimum sentence necessitates a new sentencing hearing when it appears that the trial court's misunderstanding arguably influenced the sentencing decision. *People v. Eddington*, 77 Ill. 2d 41, 48 (1979); *People v. Hurley*, 277 Ill. App. 3d 684, 687 (1996). In light of the fact that the trial court imposed a sentence of court supervision on the resisting or obstructing a peace officer charge, it is arguable that it would have done so with respect to the fleeing or attempting to elude a police officer charge had it not been laboring under the misconception that such disposition was unavailable. Therefore, we vacate defendant's sentence of probation on the fleeing or attempting to elude a police officer charge. We of course do not know whether the trial court would have granted court supervision on this charge and, in fact, some of the trial court's comments suggest that defendant's conduct in committing this offense was too serious to grant him court supervision. As such, we decline defendant's invitation to use our power under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) and impose a disposition of court supervision in place of the sentence of probation without remanding to the trial court.

As a final matter, although not raised by the State, we would be remiss in our duties were we to ignore the unauthorized disposition of court supervision imposed on the finding of guilt of resisting or obstructing a peace officer. A disposition of court supervision is not ap-

plicable to a defendant found guilty of resisting or obstructing a peace officer in violation of section 31—1 of the Criminal Code of 1961. See 730 ILCS 5/5—6—1(c) (West 2002). A sentence that does not conform to a statutory requirement is void. *People v. Thompson*, 209 Ill. 2d 19, 24 (2004). Reviewing courts have an independent duty to vacate void orders and may *sua sponte* declare orders void. *Thompson*, 209 Ill. 2d at 27. Consequently, we also vacate the disposition of court supervision imposed on the finding of guilt of resisting or obstructing a peace officer, and we remand for resentencing.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County but vacate the sentence of probation imposed on the finding that defendant is guilty of fleeing or attempting to elude a police officer. We also vacate the disposition of court supervision imposed on the finding that defendant is guilty of resisting or obstructing a peace officer. We remand the cause to the trial court for resentencing on those findings of guilt.

Affirmed in part and vacated in part; cause remanded.

O'MALLEY, P.J., and HUTCHINSON, J., concur.